IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


MOLLY CARTWRIGHT,                                          CV-05-264-AS

        Plaintiff,                                   FINDINGS AND
                                                           RECOMMENDATION
  v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

---

    MERRILL SCHNEIDER
    14415 SE Stark St.
    Portland, OR  97233-2153

        Attorney for Plaintiff

    KARIN J. IMMERGUT
    United States Attorney
    District of Oregon

    NEIL EVANS

Page -1- FINDINGS AND RECOMMENDATION

    Assistant United States Attorney
    1000 S.W. Third Avenue, Suite 600
    Portland, OR 97204-2902

    DAVID M. BLUME
    Special Assistant United States Attorney
    Social Security Administration
    701 5th Avenue, Suite 2900 M/S 901
    Seattle, WA 98104-7075

        Attorneys for Defendant

ASHMANSKAS, Magistrate Judge:

## BACKGROUND

Plaintiff, Molly Cartwright (Cartwright), brings this action for judicial review of a final decision of the Commissioner of Social Security denying her applications for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act), and Supplemental Security Income (SSI) under Title XVI of the Act. 42 U.S.C. § 1383(c)(3). This court has jurisdiction under 42 U.S.C. § 405(g).

Cartwright applied for disability in May 2002, alleging disability beginning December 31, 1992, based on depression, post-traumatic stress disorder (PTSD), anxiety, and ankle problems. Cartwright was 44 years old at the time the Administrative Law Judge (ALJ) issued his decision in this case, denying benefits. She has a high school education and past relevant work as an assembler, warehouse worker and laundry worker.

On appeal to this court, Cartwright claims the ALJ erred by: (1) failing to properly develop the record; (2) failing to find borderline intellectual functioning was one of her "severe" impairments; (3) failing to consider what effect obesity had on her alleged limitations; (4) wrongly

rejecting lay witness testimony; and, (5) relying on a deficient vocational hypothetical at step five of the sequential evaluation.

For the reasons that follow, the Commissioner's decision should AFFIRMED and this case DISMISSED.

## STANDARD OF REVIEW

The initial burden of proof rests upon the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert denied, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected...to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

/ / / / /

# DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. §§ 404.1512, 416.912. Each step is potentially dispositive.

Here, at step one the ALJ found that Cartwright had not engaged in substantial gainful activity since her alleged disability onset date. See 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two the ALJ found that Cartwright had the following "severe" impairments: ankle pain post surgeries, depression, PTSD, anxiety, and alcohol dependence in remission. See 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three the ALJ found that none of Cartwright's impairments met or equaled a Listed Impairment, codified at 20 C.F.R. Part 404, Subpart P, Appendix 1, considered so severe as to automatically constitute a disability. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

The ALJ determined that Cartwright had the residual functional capacity (RFC) to perform a significant range of sedentary work, with the following additional limitations: lifting 20 pounds occasionally and 10 pounds frequently; standing and walking for 2 hours and sitting for 6 hours in an 8-hour workday; only occasional push and pull with her lower extremities; moderate limitation in her ability to understand, remember, and carry out detailed/ multi-step instructions and to set realistic goals or make plans independently of others. See 20 C.F.R. §§ 404.1520(e), 416.920(e), 404.1545, 416.945, 404.1567, 416.967.

At step four the ALJ found Cartwright could not return to her past relevant work. See 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

At step five the ALJ found Cartwright remained capable of performing other work, existing in significant numbers in the national economy, such as table sorter or clerical addresser/ labeler. See 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## DISCUSSION

**I. Substantial evidence supports the ALJ's finding that Cartwright failed to prove she had "severe" borderline intellectual functioning. The ALJ had no further duty to develop the record.**

Cartwright alleges that the ALJ erred by failing to order a supplemental consultative examination to determine whether her intellectual functioning improved after an extensive period of sobriety. For this reason, Cartwright also contends the ALJ erred at step two of the sequential evaluation when he determined she did not have "severe" Borderline Intellectual Functioning.

### A. Step Two Severity Finding

In order to progress beyond step two of the five-step sequential evaluation, a disability claimant must prove (a) that she has a "medically determinable physical or mental impairment," and (b) that it is severe, within the meaning of the Act. See 20 C.F.R. §§ 404.1505, 416.905, 404.1520(c), 416.920(c); see also Edlund, 253 F.3d at 1159-60.

To show a "medically determinable physical or mental impairment" the claimant must proffer medical evidence from "acceptable medical sources" listed in 20 C.F.R. §§ 404.1513 and 416.913. This evidence should include: (1) medical history; (2) clinical findings; (3) laboratory findings; (4) diagnosis; (5) treatment prescribed, and the claimant's response, and prognosis; and (6) a statement about what the claimant can still do despite his impairment(s) "based on the acceptable medical source's findings." See 20 C.F.R. §§ 416.908, 416.912.

To show an impairment is "severe," the medical evidence must establish that it significantly limits the claimant's ability to do basic work activities, such as: walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, understanding, carrying out and remembering simple instructions, using judgment, responding appropriately to supervisors, co-workers, and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 416.921. An impairment is not severe if it has no more than a minimal effect on the claimant's ability to do these types of activities. See SSR 96-3p.

Here, the ALJ determined that Cartwright failed to prove she had the medically determinable impairment of borderline intellectual functioning, let alone that it significantly limited her ability to do basic work activities. Notably, Cartwright did not purport to have this impairment on her disability application. Gary Sacks, Ph.D., who performed a psychological consultative evaluation on June 11, 2002, diagnosed Cartwright with borderline intellectual functioning for the first time, yet he questioned whether she suffered from depression, as she alleged, because validity testing showed extreme over reporting and exaggeration of symptomology. Since Cartwright had been sober only six weeks at the time of the evaluation, "after years of heavy drinking," Dr. Sacks opined that Cartwright might "experience some increase in her ability to display her intellect as the length of her sobriety increases." The ALJ rejected the diagnosis of borderline intellectual functioning, stating "No treating source has noted any intellectual deficits."

Cartwright does not directly allege that the ALJ wrongly rejected Dr. Sacks' diagnosis, but that he erred by finding she did not have "severe" borderline intellectual functioning. According to Cartwright, the ALJ thought Dr. Sacks said her intellectual functioning might improve, but what he actually said was that her ability to display her intellect might increase with extended sobriety.

Not only do I find the ALJ's rephrasing of Dr. Sacks' statement to be reasonable, even if the ALJ had accepted Dr. Sacks' diagnosis, it would not have established a severe impairment. Dr. Sacks was not Cartwright's physician, he offered no treatment or prognosis (and therefore could not address her response to potential treatment), and he did not evaluate what effects, if any, borderline intellectual functioning would have on her ability to perform basic work activities. Nor does Cartwright point to any other acceptable medical source who did. In fact the only other "evidence" Cartwright references is a July 10, 2002, intake evaluation completed by a nurse practitioner, who opined that Cartwright "seems slow to answer/understand medical treatment...possibly [due to] a learning disability." Suffice it to say, this note falls well short of the evidence required in 20 C.F.R. §§ 416.908 and 416.912, to prove a medically determinable impairment.

### B. Duty to Develop the Record

The burden of demonstrating a disability lies with the claimant. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). However, "the ALJ has a duty to assist in developing the record." Armstrong v. Commissioner of Soc. Sec. Admin., 160 F.3d 587, 589 (9th Cir. 1998); 20 C.F.R. §§ 404.1512(d)-(f), 416.912(d)-(f). To that end, the ALJ "will make an initial request for evidence from [the claimant's] medical source" and if the medical source has not responded within 20 days of the request, the ALJ "will make one followup request to obtain the medical evidence necessary to make a determination." 20 C.F.R. §§ 404.1512(d), 416.912(d). If the evidence provided by the medical source "contains a conflict or ambiguity" that cannot be resolved by other evidence in the record, then SSA will re-contact the medical source for clarification. Id. at 404.1512(e), 416.912(e); see also Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). If the medical source does not, or cannot, provide clarification, then SSA has the option of ordering a consultative evaluation to

resolve the conflict or ambiguity. Id. at 404.1512(f), 416.912(f). However, the SSA has no duty to develop the record if the claimant simply fails to provide medical evidence to support her allegations. In that case, SSA will make a decision based on the available information. Id. at 404.1516, 416.916.

In this case the ALJ did order a consultative evaluation, as previously noted, presumably because Cartwright's medical record contained very little evidence of her alleged mental impairments. Cartwright contends the ALJ should have ordered another consultative evaluation "to properly ascertain her intellectual functioning with extended sobriety." This contention is clearly premised on Dr. Sacks' statement that Cartwright's ability to display her intellect might improve with extended sobriety. However, this comment did not create the type of ambiguity or conflict necessitating further consultative evaluation, because it could be resolved by reference to other evidence in the record. The ALJ resolved it by rejecting the diagnosis of borderline intellectual functioning in its entirety. Thus, no further consultations were required.

II. **Cartwright fails to allege error resulting from the ALJ's failure to consider obesity in the sequential evaluation process.**

Cartwright alleges "the ALJ did not consider Ms. Cartwright's obesity in conjunction with his determination of her severe impairments, nor is there any evidence he considered it at the later steps of his sequential evaluation." Cartwright relies on Social Security Ruling (SSR) 02-1p and Celaya v. Halter, 332 F.3d 1177 (9th Cir. 2003), to argue that the ALJ was required to consider whether her obesity "singly or in combination with her other impairments, is severe or meets or equals a Listing" and "to include her obesity in his RFC assessment." I disagree. SSR 02-1p, issued on September 12, 2002, explains *how* obesity should be considered in the sequential evaluation process.. However, it does not explain *when* to consider the affects of obesity. As the

Commissioner points out, the Ninth Circuit in Celaya examined whether the Commissioner must consider the affects of obesity where the claimant had not expressly alleged obesity as a separate impairment or claimed any functional limitations attributable to obesity. The Court found that the ALJ should have done so in Celaya because the claimant was unrepresented at the hearing, there was "ample" evidence in the record that obesity caused many of her alleged symptoms, and because it was clear from observing the claimant, as the ALJ did, that her weight impaired her. Id. at 1108-83. However, Celaya does not hold that obesity must be considered simply because a claimant is overweight.

The facts of this case are quite distinct from Celaya. Cartwright was represented by an attorney at the hearing who thoroughly developed the record, but never asked her about her weight or argued that obesity by itself, or in combination, imposed work-related functional limitations. Nor did Cartwright allege disability based on obesity on her applications. Further, the evidence of obesity is far from "ample" in Cartwright's record; in fact the record contains passing references to her weight, beginning in June, 2002 (though her alleged disability onset date is December 31, 1992), but no formal diagnosis.

Cartwright has not identified any evidence of additional functional limitations attributable to obesity that the ALJ neglected to consider. She states only that obesity "affects" her ankle impairment, and "increases the resulting limitations." Yet, the ALJ properly accounted for Cartwright's ankle impairment in his RFC assessment by finding her capable of only sedentary exertional level work, limited further by only occasional pushing and pulling with her lower extremities. I find the ALJ's RFC assessment was reasonable and based on substantial evidence in the record. Therefore, I see no basis for remand to reassess it.

/ / / / /
## III. Substantial evidence supports the ALJ's evaluation of lay witness testimony.

Cartwright alleges the ALJ wrongly rejected the lay witness testimony of her friends who submitted written statements in May 2004. Bennie Garcia indicated that Cartwright was never able to hold jobs for very long, she is anxious and has trouble getting along with people, she has to "stop frequently" when she goes out, she has to put her feet up due to pain and swelling in her ankles several times a day, she sometimes starts crying for absolutely no reason, and sometimes she gets quiet or makes mean comments for no reason at all.

Gerald Ash's comments were similar to Mr. Garcias. Mr. Ash stated that Cartwright used a wheelchair after she injured her ankles, her legs sometimes give out on her, since she stopped drinking alcohol she sometimes bursts out crying for no apparent reason or suddenly says something mean, she spends most of her time in her apartment, doesn't want to talk to anyone, never wants to go out, and she has to be reminded of all her appointments.

Leal Vice indicated that Cartwright was confined to a wheelchair after ankle surgery, and that her abusive childhood had injured her.

The ALJ must account for lay witness testimony and provide germane reasons for rejecting it, but he is not required to discuss non-probative information. See Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Vincent ex. rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

The ALJ found these statements to be less than fully credible because they were not supported by the medical evidence, which did not reflect that Cartwright was confined to a wheelchair, or that her legs "give out" on her. Further, the ALJ noted that her reports of irritability coincided with losing or running out of medication. The ALJ also found these statements conflicted

with Cartwright's admissions on disability worksheets that she does housecleaning, gardening, bike riding, walking, yoga, and goes to the gym three times a week, and her testimony at the hearing that she attends Alcoholics Anonymous meetings, Native American sweating rituals, and women's support groups.

Cartwright argues the activities she reported on disability worksheets in 2002 should not be used to discredit lay witness testimony from 2004, because her condition declined in the intervening years. Yet, the lay witness statements, although submitted in 2004, clearly purport to comment on Cartwright's condition at least as far back as 2001, when she suffered ankle injuries. This was a germane reason to discredit lay witness testimony.

Cartwright does not contest the ALJ's rejection of her own testimony, but argues that the ALJ was wrong to use her discredited testimony as a basis for finding lay witness testimony incredible. However, the ALJ did not discredit her reported activities of daily living. To the contrary, he determined that her alleged degree of disability was inconsistent with these admissions.

Finally, even giving Cartwright the benefit of the doubt about why she didn't report her legs "going out" to any medical source, I still find that the ALJ provided germane reasons to discredit the lay witness testimony overall.

**IV.  Substantial evidence supports the ALJ's step five determination that Cartwright is not disabled.**

Cartwright contends the ALJ failed to meet his burden at step five of the sequential evaluation because he posed an incomplete vocational hypothetical question to the vocational expert (VE).

At step five of the sequential evaluation, the Commissioner must show that the claimant can do other work which exists in the national economy. Andrews v. Shalala, 53 F.3d at 1043. The

Commissioner can satisfy this burden either by applying the guidelines at 20 C.F.R. § 404, Subpt. P, App. 2, or by eliciting the testimony of a VE with a hypothetical question that sets forth all the limitations of the claimant. Id. If a claimant has functional limitations or work restrictions which prevent her from performing the full range of work at a given exertional level, the guidelines cannot be used at step five to determine whether she is disabled. Instead, the ALJ must elicit testimony from a VE to determine whether jobs exist in the national economy that the claimant can perform despite her limitations and restrictions. Tacket v. Apfel, 180 F.3d 1094, 1103-04 (9th Cir. 1999).

Here, since Cartwright's RFC would not allow for a full-range of work at any given exertional level, the ALJ elicited the expert opinion of a VE. He asked the VE to consider whether a hypothetical worker with Cartwright's age, education, work experience and RFC could perform other work. However, as Cartwright correctly contends, the ALJ misstated one of the limitations in her RFC-- he stated that she had limited ability to push and pull with her *left* lower extremity, but not her right, when in fact her RFC supported limited ability to push and pull with *both* lower extremities. She also argues the hypothetical was incomplete because it should have included a limitation on the ability to "interact socially in society."

Since the ALJ discredited the lay witness testimony Cartwright relies on to argue that she was limited in the ability to interact socially, he properly excluded this limitation from her RFC. See Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001). Nevertheless, the hypothetical question posed to the VE was incomplete because the ALJ misstated the push and pull limitation. Yet, as the Commissioner correctly contends, this error was harmless because the jobs identified by the VE – table sorter and clerical addresser/ labeler – were both unskilled, sedentary jobs that do not require pushing or pulling with *either* lower extremity. See Burch v. Barnhart, 400 F.3d 676 (9th Cir.

2005)(the ALJ's decision will not be reversed for errors that are harmless). Accordingly, I find substantial evidence to support the ALJ's determination that Cartwright was not disabled because she remained capable of performing work existing in significant numbers in the national economy.

## RECOMMENDATION

Based on the foregoing, the Commissioner's final decision should be AFFIRMED.

### Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due **January 27, 2006**. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 12th day of January, 2006.

_____
Donald C. Ashmanskas
United States Magistrate Judge